UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN L. ADAMS,

                  Petitioner,

v.

UNITED STATES OF AMERICA,

                  Respondent.

_____/

Criminal Case Number 04-20027
Civil Case Number 05-10327
Honorable David M. Lawson
Magistrate Judge Charles E. Binder

**<u>OPINION AND ORDER OVERRULING OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING
RECOMMENDATION, DENYING PETITION TO VACATE SENTENCE</u>**

      The petitioner, Deshawn L. Adams, was convicted upon his plea of guilty of violating the Controlled Substances Act and sentenced to 120 months in prison. He filed a petition under 28 U.S.C. § 2255 to vacate his sentence, raising the issue that his trial counsel was constitutionally ineffective by failing to raise and dispute three sentencing arguments. The Court referred the motion to Magistrate Judge Charles E. Binder for a report and recommendation. On January 12, 2007, Judge Binder issued a report recommending that the motion be granted in part and a hearing held on the state court conviction issue, and denied as to the ineffective assistance claims. On January 22, 2007, the Court referred the case back to Judge Binder because the original reference order authorized him to conduct the hearing. Judge Binder thereafter held an evidentiary hearing on May 16, 2007. On July 11, 2007, Magistrate Judge Binder issued another report recommending that the petitioner's claim related to the state court conviction be denied. On July 20, 2007, the petitioner filed objections to both R&Rs. On August 9, 2007, the government responded. The Court has conducted a *de novo* review of the matter and concludes that the petitioner's objections lack merit,

the magistrate judge correctly decided the issues, and the petition should be denied for the reasons set forth in the report and for the additional reasons set forth below.

I.

The petitioner's main arguments focus on his sentence of 120 months in custody, which was the statutory mandatory minimum sentence applicable to the crime of conspiracy to distribute five grams or more of crack cocaine, because the petitioner had a prior felony drug conviction. *See* 21 U.S.C. §§ 841(b)(1)(B), 851. In his motion under 28 U.S.C. § 2255, the petitioner argues that (1) his trial counsel was ineffective for failing to object to the addition of two points for role in the offense under U.S.S.G. § 3B1.1(c); (2) his trial counsel was ineffective for failing to raise the section 3B1.1(c) issue on appeal and make arguments under *United States v Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004); and (3) the addition of points under U.S.S.G. § 5G1.3 and the enhanced sentence under 21 U.S.C. § 851 for a prior state conviction was improper because the state court acquitted the petitioner of the offense. The petitioner bases the last of these arguments on the premise that his felony drug conviction ought not to count as a "conviction" at all because the petitioner was adjudicated under a state diversion statute. Because "there can be no constitutional deficiency in counsel's failure to raise meritless issues," *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir.1999), the Court must examine the merits of the underlying issues to determine if trial counsel's performance was deficient by not raising them in the first instance.

A criminal complaint was filed against the petitioner on April 28, 2004, alleging involvement in a drug trafficking operation that brought cocaine base from a supplier in Detroit to customers in Mount Pleasant. On May 26, 2004, the petitioner was indicted with several co-defendants on two counts. Count 1 charged a conspiracy to distribute fifty grams or more of cocaine base, in violation

of 21 U.S.C. § 846, and Count 2 charged an unlawful use of a communication facility to distribute cocaine base, in violation of 21 U.S.C. § 843(b). The petitioner pleaded guilty on October 12, 2004 to the offense of conspiracy to distribute five grams or more of cocaine. The government agreed to dismiss Count 2. The petitioner's plea agreement contains the following provisions:

> 3. Sentence Agreement.
> A. The parties stipulate to the following:
> (1) That the defendant is accountable for sentencing guideline purposes for at least 35 grams but less than 50 grams of cocaine base, which is a base offense level of 30;
> (2) That a 2-level enhancement for role in the offense is warranted;
> (3) That the defendant has been convicted of felony drug offense which has become final.

Rule 11 Agreement at 3. At the plea hearing, the following was said:

> MR. MITCHELL: . . . There's also a stipulation between the parties in 3A2 that a two level enhancement for role in the offense is warranted. Specifically, that relates to the defendant's role with respect to less than five other participants.
> . . .
> THE COURT: Now, Mr. Adams, do you have any questions about the plea agreement?
> A. No, your Honor.
> THE COURT: Do you understand that all of the terms that we just recited with respect to Mr. Parks apply to you except for the two items, you're responsible for a greater quantity, also your guideline score will go up two levels because of your leadership role in the offense?
> A. Yes, your Honor.
> THE COURT: Have you had a chance to discuss the plea agreement with Mr. Escobedo to your satisfaction?
> A. Yes, your Honor.
> THE COURT: Do you agree with the terms?
> A. Yes, your Honor.
> . . .
> THE COURT: Mr. Adams, apparently you have a prior drug felony conviction, do you understand that?
> A. Yes.
> THE COURT: That's brought to our attention by filing what's called a notice, an information, for enhancing the penalty in your case. And you received a copy of that I presume, right?
> A. Yes.

THE COURT: All right. That takes the maximum penalty up to ten years – excuse me – up to life in prison, and a minimum penalty of up to 120 months or 10 years in custody; do you understand that?
A. Yes.
. . .
THE COURT: With respect to you, Mr. Adams, there's a statement in the plea agreement that a two level enhancement for your role in the offense is warranted in this case. That means that you had some sort of leadership role in this conspiracy. Can you tell me what that means?
A. I don't have the slightest idea; I didn't have a leadership role in this, your Honor.
THE COURT: All right. Did you cook up the cocaine base, the crack, yourself or did you get it from someone else?
A. I got it from someone else.
THE COURT: All right. And did you distribute it to others that, in turn, sold it to even more people?
A. No.
THE COURT: Did you collect money?
A. No.
THE COURT: So you were just giving it away?
A. Yeah, I collected money for it when I distributed it out.
THE COURT: What did you do with the money?
A. I have it to someone else.
THE COURT: All right, who?
A. Mr. Patton.
THE COURT: And did you assist Mr. Patton in telling others what to do with respect to distributing cocaine base?
A. No, your Honor.
THE COURT: All right. Mr. Mitchell, how are you going to prove up a role adjustment?
MR. MITCHELL: Your Honor, the government is prepared to prove that earlier this year with respect to distribution of crack cocaine at the White Hill Road address, Mount Pleasant mailing, that several individuals who worked at that physical location selling crack cocaine. That the crack cocaine organization was headed by Mr. Patton. That Mr. Patton supplied the cocaine to these individuals, and the individuals sold it and then supplied the money back to Mr. Patton.

    The individuals were working at the house would include this defendant as well as three others, and that they were in telephonic communication with Mr. Patton, many of those communications – in fact, all the communications during the intercept period were intercepted by the government.

    During that time period, there were occasions when individuals sought credit or special deals and communication had to be made, or was attempted to be made, between the individual selling and Mr. Patton.

>    On some occasion, Mr. Patton was not available and the government believes it can show that Mr. Adams then stepped into that role to advise the others whether, for example, credit would be extended to a particular customer.
> UNIDENTIFIED AUDIENCE MEMBER: That's a lie.
> MR. MITCHELL: That's with respect to at least one other individual who qualified for the two level role. We're not indicating Mr. Adams had any role beyond that or that he was the equivalent of Mr. Patton in this organization.
> THE COURT: All right. Did you hear what Mr. Mitchell said, Mr. Adams?
> A. Excuse me?
> THE COURT: Did you understand what Mr. Mitchell just said to me?
> A. Yes, I did.
> THE COURT: Was that true or not?
> A. To a certain extent, yes, it is.
> THE COURT: So it's part true and part not true?
> A. Yes.
> THE COURT: As frequently happens in statements like that. Were you working at the house at the time?
> A. Yes.
> THE COURT: Were you fielding phone calls and agreeing that certain people could front their cocaine base, their crack?
> A. Only from me.
> THE COURT: You mean you would distribute it to someone who would pay you later?
> A. Yes.
> THE COURT: After they sold theirs?
> MR. ESCOBEDO: Let me have just a second, your Honor.
> THE COURT: Of course, Mr. Escobedo.
> (Short pause)
> A. Yes, your Honor.
> THE COURT: All right. Now, were you responsible for at least 35 grams of cocaine base, for selling that over the period of time this conspiracy went on?
> A. Yes, your Honor.
> . . .
> THE COURT: Mr. Adams, is it still your intention to plead guilty?
> A. Yes.

Plea Hr'g Tr. 21-22, 31-32, 41-45, 47 (Oct. 12, 2004).

After the plea was taken, a presentence investigation report was prepared. The report recommended that the petitioner be held responsible for 35 to 50 grams of cocaine base with a base offense level of 30. Two points were added for role in the offense under 3B1.1(c), and three points

were deducted for acceptance of responsibility under 3E1.1(a), for a total offense level of 29. The petitioner was assigned four criminal history points, which correlates with criminal history category III. Based on the prior offense, which triggered a mandatory ten-year sentence, the report recommended a guideline range between 120 and 135 months. Neither the government nor the petitioner objected to the presentence investigation report.

As noted earlier, the petitioner was sentenced on January 13, 2005 to 120 months. The sentencing took place the day after *Booker* was decided. The Court noted,

> We've had a minor development, I guess, in the sentencing law yesterday when the guidelines were invalidated in terms of their mandatory application. The way I read the Booker decision, the guidelines are still advisory and ought to be consulted. However, in my view, this case is primarily driven by the fact that the defendant pleaded guilty to an offense with a statutory mandatory minimum, and the statutory minimum sentences were not affected at all – at least in my view – by the Booker decision.

Sent. Hr'g 2-3, Jan. 13, 2005. There was no direct appeal of the judgment, but on December 22, 2005, the petitioner filed the present motion to vacate his sentence under 28 U.S.C. § 2255.

The petitioner's criminal history score and the penalty enhancement information were based in part on an October 2003 felony drug conviction in state court. According to the record, on October 28, 2003, the petitioner pleaded guilty to violating Michigan Compiled Laws § 333.7401(2)(a)(iv), which makes it a felony to manufacture, deliver, or posses less than fifty grams of cocaine or other schedule one and two narcotic drug. He plea was accepted under Michigan Compiled Laws § 333.7411, and was sentenced to one year probation on December 16, 2003. When a person pleads guilty under section 333.7411, "the court, without entering a judgment of guilt with the consent of the accused, may defer further proceedings and place the individual on probation." Mich. Comp. Laws § 333.7411(1). The statute further provides: "Upon violation of a term or

condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge the individual and dismiss the proceedings." *Ibid.* The state court entered an Order of Conviction and Sentence indicating that "the defendant was convicted by plea of" violating Michigan Compiled Laws § 333.7401(2)(a)(iv). Govt's Resp. to Pet.'s Mot. Ex. A. The state court also filed an Order of Probation (Felony) dated December 16, 2003 showing the petitioner was convicted and sentenced to one year of probation under this statute. Govt's Resp. to Pet.'s Mot. Ex. B.

While the petitioner was on probation, the grand jury indicted the petitioner in the present case before this Court; so on June 9, 2004, the state court issued a bench warrant for the petitioner's arrest. The petition for the warrant to be issued states that "the defendant was arrested on 4/29/2004 in Mt. Pleasant, for charges of Conspiracy to Distribute 50 or More Grams of Cocaine, by the Federal Drug Enforcement Agents." Govt.'s Resp. Ex. C, Petition, Affidavit, and Bench Warrant (June 9, 2004). On May 14, 2005, the petitioner pleaded guilty to violating his probation. Apparently this resulted in the discharge of the probation sentence of December 2003. The state court entered a Motion and Order for Discharge from Probation, which was signed by a state judge in May 2005. The probation officer submitted the motion because "A warrant for violation of probation was signed on 6/9/04, due to Technical violations. On 5/14/05, the defendant plead guilty to violation of probation and case was closed without improvement by Your Honor." Govt.'s Resp. Ex. D, Motion and Order for Discharge From Probation. However, by that point the petitioner was in federal custody.

The petitioner has submitted an order from the state court dated July 27, 2005 that states "The defendant's motion for dismissal is granted without prejudice and the case is dismissed." Pet.

Ex. A, Order of Acquittal/Dismissal or Remand (July 27, 2005). The Court referred the present motion to the magistrate judge to hold an evidentiary hearing to sort this out. No transcript has been submitted, but the following statements appear in both the pre- and post-hearing reports of the magistrate judge:

> [W]eeks of diligent searching by staff members of the Wayne County, Michigan, Circuit Court Clerk's Office has revealed no present evidence, either in electronic or hard-copy form, that this conviction currently exists on Petitioner's record. While this fact could certainly indicate other outcomes, according to judicial assistants in the Wayne County Circuit Court Clerk's Office, failure to find this case file also could indicate that Petitioner in fact met the requirements for H[olmes] Y[outhful] T[rainee] A[act] status.

First R&R at 9; Second R&R at 6. The magistrate judge appears to be basing this conclusion on his personal research, since there is no evidence in the record underlying this statement. Nevertheless, the documents submitted by the government support the conclusion that the petitioner was placed on probation under a state diversionary statute, he did not successfully complete the probation, and the case was closed.

It is upon this record that the petitioner bases his argument that the state conviction should not count toward enhancing his sentence for the drug crime in federal court. The magistrate judge disagreed and recommended that the petitioner's motion be denied. The petitioner objected by reiterating the arguments he made to the magistrate judge.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."

*Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255. Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 422 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687. A defendant is entitled to effective assistance at the sentencing stage of the criminal process. *See Wiggins*, 539 U.S. at 521.

The petitioner states that his trial counsel should have challenged the government's effort to use his state drug conviction under section 333.7411 to enhance his federal sentence and calculate his criminal history score because the "conviction" as such was never entered in the state record. However, the Sixth Circuit has held that a guilty plea under section 7411 amounts to a "conviction" for federal purposes.

> By its terms, M[ich]. C[omp]. L. § 333.7411 only applies when an individual "pleads guilty to or is found guilty of" specified statutes banning drug possession and use. As this constitutes a conviction under the rule derived from *Preuss*, *Funk*, and M[ich]. C[omp]. L.§ 769.1(1), the evidence that defendant had been put on probation pursuant to section 333.7411 was sufficient to sustain the conviction under [the felon in possession of firearm statute].

*United States v. Hawkins*, 969 F.2d 169, 173 (6th Cir. 1992).

The petitioner points to the state court order that dismisses the case with no formal adjudication of guilt. Indeed, the state statute says:

> Discharge and dismissal under this section shall be without adjudication of guilt and . . . is not a conviction for purposes of this section or for purposes of disqualifications

or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for second or subsequent convictions under section 7413.

Mich. Comp. Laws § 333.7411(1). That language is not dispositive, however.

In *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), the Supreme Court addressed a similar issue in the context of the Gun Control Act, which prohibited an individual "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from shipping firearms in interstate commerce. Mr. Dickerson had pleaded guilty to carrying a concealed weapon under a statute that provided for a penalty of up to five years in prison. The state trial court had "deferred" entry of judgment under a state law that permitted "'upon a plea of guilty, verdict of guilty, or a special verdict upon which a judgment of conviction may be rendered'" a court to "'defer judgment and place the defendant on probation upon such terms and conditions as it may require. Upon fulfillment of the terms of probation the defendant shall be discharged without entry of judgment.'" *Id.* at 107 & n. 3 (quoting Iowa Code § 789A.1 (1978)). Having complied with the terms of his probation, his record was expunged. However, the Supreme Court concluded that he had a prior conviction:

> The salient fact is Kennison's plea of guilty to a state charge punishable by more than a year's imprisonment. The usual entry of a formal judgment upon a jury verdict or upon a court's specific finding of guilt after a bench trial is absent. Present, however, are (a) the charge of a crime of the disqualifying type, (b) the plea of guilty to that charge, and (c) the court's placing Kennison upon probation.
> . . .
> Whether one has been "convicted" within the language of the gun control statutes is necessarily, as the Court of Appeals in the present case correctly recognized, 649 F.2d, at 219, a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State. *United States v. Benson*, 605 F.2d 1093, 1094 (CA9 1981). This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of "conviction."
> . . .

> The state judge who noted Kennison's plea placed him on probation. To be sure, there was no written adjudication of guilt and there was no formal pronouncement of a sentence of imprisonment for a specified term. But that was due to special provisions of Iowa statutory law and procedure. It was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of "a crime punishable by imprisonment for a term exceeding one year." § 922(g) (emphasis supplied). It is also plain that one cannot be placed on probation if the court does not deem him to be guilty of a crime – in this case a crime that Congress considered demonstrative of unreliability with firearms. Thus, for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being "convicted" within the language of §§ 922(g) and (h).

*Id.* at 111-14 (footnotes omitted). The Court further found that Iowa's expungement did not nullify the conviction. *Id.* at 115. The Court noted that "the meaning of the terms 'convicted' and 'conviction' vary from statute to statute." *Id.* at 112-13 nn. 6 & 8. Congress subsequently overturned this decision by amending the Gun Control Act by stating that conviction depends on the law of the state and any expungement of the conviction means the conviction does not count under 18 U.S.C. § 922. *United States v. Cassidy*, 899 F.2d 543, 547 (6th Cir. 1990). But the reasoning of the case remains sound.

For instance, in *United States v. Miller*, 434 F.3d 820 (6th Cir. 2006), the Court determined whether a defendant who had participated in a first offender program under Georgia law had a final prior felony conviction for purposes of § 841(b)(1). Under Georgia law, "[s]uccessful completion of probation entitles a first-offender to 'be discharged without court adjudication of guilt' and, as a result, 'the defendant shall not be considered to have a criminal conviction.'" *Id.* at 823 (quoting Ga. Code Ann. § 42-8-62(a)). When the defendant receives first offender status, "'his case assumes the mantle of finality necessary to bring a direct appeal of his conviction'" *Id.* at 824 (quoting *Dean v. State*, 177 Ga. App. 123, 338 S.E.2d 711, 712 (1985)). The Court found that a defendant who participated in such a program had a final prior conviction. Writing that the meaning of the word

"final" was controlled by federal law, the Court held "a conviction becomes final for the purpose of sentencing when the time for taking a direct appeal from the judgment of conviction has expired." *Id.* at 823 (citing *United States v. Walker*, 160 F.3d 1078, 1093 (6th Cir. 1998)). Because the defendant was permitted to appeal his sentence within thirty days of the sentence, but failed to do so, his conviction was final. *Id.* at 824. The Court also found that the prior adjudication was a conviction:

> It has long been recognized that alternative sentencing such as that utilized by Georgia in its first-offender provision does not prevent the underlying offense from being treated as a prior conviction for purposes of federal sentencing statutes. *See, e.g., Dickerson v. New Banner Institute Inc.*, 460 U.S. 103 (1983); *Hagins v. United States*, 267 F.3d 1202, 1208 (11th Cir. 2001); *Cisneros*, 112 F.3d [1272,]1272, 1282 [(5th Cir. 1997)]. As the court noted in [*United States v. Petros*, 747 F. Supp. 368 (E.D. Mich. 1990)], the policy behind state first-offender provisions and similar alternative sentencing statutes is "to allow first offenders, who are often youthful, an opportunity to straighten themselves out on the road of life without the baggage of a drug conviction on their record" and is meant "as an incentive to learn a lesson . . . [but] is clearly not meant to provide them with a technical legal advantage if, not having learned a lesson, they continue their criminal conduct." 747 F. Supp. at 376. In the wake of continued criminal conduct, first-offender sentences are considered "prior offenses" under § 841 that become "final" at the point at which they are no longer appealable.

*Ibid.*

In *Uritsky v. Gonzales*, 399 F.3d 728 (6th Cir. 2005), the Sixth Circuit interpreted the meaning of "conviction" as it related to the Immigration and Nationality Act. The petitioner was assigned youthful trainee status under Michigan Compiled Laws § 762.11, and no judgment of conviction was entered. Nevertheless, the Court found that the petitioner had a "conviction" of an aggravated felony under the meaning of 8 U.S.C. § 1101. The statute defines conviction as

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where -
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

*Id.* at 729-30 (quoting 8 U.S.C. § 1101(a)(48)(A)).

Another judge in this District has held that a guilty plea under Michigan's section 7411 to a drug felony offense will satisfy the prior felony requirement of 21 U.S.C. § 851. *United States v. Petros*, 747 F. Supp. 368 (E.D. Mich. 1990). The defendant in that case, like the petitioner here, was indicted while serving his state probation under section 7411. And cases from other circuits suggest that this sort of deferred adjudication constitutes a conviction that is final for the purpose of the penalty-enhancement statute. *See, e.g., United States v. Fazande*, 487 F.3d 307, 308 (5th Cir. 2007); *United States v. Jackson*, 504 F.3d 250, 252 (2d Cir. 2007); *United States v. Norbury*, 492 F.3d 1012, 1014-15 (9th Cir. 2007); *United States v. Acosta*, 287 F.3d 1034, 1037 (11th Cir. 2002); *United States v. McAllister*, 29 F.3d 1180 (7th Cir. 1994).

Given the weight of authority, the Court cannot conclude that trial counsel's performance was deficient by failing to raise a challenge to the petitioner's felony drug conviction in this court or on appeal. The facts available show that the petitioner pleaded guilty to a felony drug offense, and he was placed on a term of probation. Although there is disagreement as to whether his case was dismissed or not, it is ultimately irrelevant. Unfortunately for the petitioner, this case is controlled by *United States v. Miller*, 434 F.3d 820 (6th Cir. 2006). Under *Miller*, pleading guilty to a crime, even if it does not result in a conviction under state law, may be used to enhance sentences pursuant to the statutory minimums of 21 U.S.C. § 841, as long as the time for appeal has expired. There is no doubt that the petitioner pleaded guilty to a felony drug offense. He was sentenced to a term of probation on December 16, 2003.

The petitioner attempts to distinguish *Miller* in that the *Miller* defendant could still appeal, while the petitioner here could not. If true, this would seem to distinguish *Miller*, because *Miller* expressly held "a conviction becomes final for the purpose of sentencing when the time for taking a direct appeal from the judgment of conviction has expired." *Miller*, 434 F.3d at 823. However, under Michigan law, the defendant had the ability to appeal his sentence of probation under the Act as of right for forty-two days. *See People v. Wilson*, 97 Mich. App. 579, 581, 296 N.W.2d 110, 111 (1980). His forty-two day window for filing an appeal from the time he received his one-year sentence elapsed on January 27, 2004. Under *Miller*, his prior conviction became final on that date.

Here, the defendant pleaded guilty to a lesser offense included within Count I of the indictment. Count I of the indictment charged a violation of 21 U.S.C. § 846 "from about January of 2000, to about April 27, 2004." The plea agreement is silent to the actual dates of the petitioner's conduct in the conspiracy. However, if he committed a violation of the drug laws after January 27, 2004, which it appears that he did, that violation occurred after his prior conviction had become final. *See United States v. Walker*, 160 F.3d 1078 (6th Cir. 1998). The magistrate judge incorrectly referred to another state diversion statute when he concluded that "HYTA status may properly be considered for federal sentencing purposes whether or not Defendant's youthful trainee status was revoked." That error is of no consequence, since the reasoning applies with equal force to diversions under Michigan Compiled Laws § 333.7411. Applying that conclusion to the facts of this case leads to the conclusion that when the petitioner committed the violation of the federal drug laws, he had a prior felony drug conviction that had become final under the meaning of 21 U.S.C. §§ 841, 851.

Nor did trial counsel err in not challenging the petitioner's role adjustment under U.S.S.G. § 3B1.1(c). The evidence amply supports that enhancement. But even if the failure to raise that

issue were found to be substandard, there is no prejudice that could result because the mandatory minium prescribed by the statute set the floor for the sentencing guideline range. *See* U.S.S.G. § 5G1.1(b). Because both elements of the *Strickland* test must be satisfied before a constitutional violation can be found, a court need not analyze the performance element if the petitioner fails to show prejudice. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

Finally, the petitioner's argument that he is entitled to relief under *Booker* and *Blakely* fails as well. The sentence hearing in this case took place the day *after Booker* was decided, and the Court noted specifically that it was treating the sentencing guidelines as advisory. Consequently, no objection by defense counsel was necessary.

III.

The Court finds that the petitioner's objections to Magistrate Judge Binder's report and recommendation lack merit. The petitioner has failed to show that his trial counsel provided him with constitutionally ineffective representation.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt # 271] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt # 267] is **ADOPTED**. The Court believes that the report and recommendation of July 11, 2007 supersedes the report and recommendation of January 12, 2007 [dkt. #254], which is hereby dismissed.

It is further **ORDERED** that the petitioner's motion to vacate his sentence [dkt # 210] is **DENIED**.

It is further **ORDERED** that the government's motion for extension of time to file response [dkt. #273] is **DENIED AS MOOT**.

<pre>                                           s/David M. Lawson                          
                                           DAVID M. LAWSON
                                           United States District Judge
</pre>

Dated:   December 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 24, 2008.

<pre>                          s/Felicia M. Moses                
                          FELICIA M. MOSES
</pre>